O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| ACACIA, INC., | CASE NO. SACV 11-1329-JST (ANx) |
|---|---|
| Plaintiff/Counter-Defendant, | |
| vs. | **ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| NEOMED, INC., | |
| Defendant/Counter-Plaintiff. | |

1

1    Before the Court is Plaintiff/Counter-Defendant Acacia, Inc.'s ("Acacia's") Motion
2  for Partial Summary Judgment and an Order Directing the United States Patent and
3  Trademark Office ("USPTO") to Cancel Supplemental Trademark Registration No.
4  3,478,363 ("Motion for Partial Summary Judgment").  (Mot., Doc. 39.)
5  Defendant/Counter-Plaintiff NeoMed, Inc. ("NeoMed") filed an Opposition (Opp'n, Doc.
6  46), and Acacia filed a Reply (Reply, Doc. 47).  Having read and considered the papers
7  and heard oral argument, the Court GRANTS Acacia's Motion for Partial Summary
8  Judgment.

## I.    Background

Acacia and NeoMed are medical device companies that both produce neonatal feeding systems, including tubes, connectors, and syringes.  Although the parties vigorously dispute many of the background facts, the parties agree that errors in tubing and catheter misconnection with devices not intended for enteral use can result in serious, adverse health consequences and have led to patient death and permanent loss of function.  (Statement of Uncontroverted Facts ("SUF") ¶ 2, Doc. 40.)  Companies have used color-coded tubing and connections to diminish the risk of misconnection (*id.* ¶ 3), although the parties dispute whether color-coding is necessary with the current design of neonatal enteral devices.  (Statement of Genuine Issues ("SGI") ¶ 3, Doc. 46-3.)  NeoMed does not dispute that it uses orange to color-coordinate its "enteral use only" devices (SUF ¶ 7; SGI ¶ 7), as do several other companies (SUF ¶ 10; SGI ¶ 10).  Acacia and Utah Medical Products, in particular, selected the color orange for their enteral only devices as a safety measure.  (SUF ¶ 18.)

In January 2007, NeoMed's predecessor, Specialty Medical Products, applied to the USPTO for a trademark described as follows:  "The mark consists of trade dress for oral syringes consisting of the color orange for gradation [sic] markings and text or text box on

a clear barrel." (Ex. 36.) The USPTO rejected the application for registration on the Principal Register (Ex. 38), but allowed registration on the Supplemental Register on July 29, 2008 (Ex. 41). As described in the Supplemental Register, "[t]he mark consists of the color orange as applied to the graduation markings and text or text box on the barrel of the syringe." (*Id.*)

On June 8, 2011, NeoMed sent Acacia a "cease-and-desist" letter regarding Acacia's use of orange on Acacia's GRAVIFEED line of syringes, including the use of orange applied to graduation markings and to the text "GRAVIFEED by Acacia" and "FOR ENTERAL USE ONLY" on the barrel of the syringe. (Compl., Ex. 14, Doc. 1-7.) On September 1, 2011, Acacia filed this action for declaratory relief and cancellation of NeoMed's trademark registration. (Compl.) NeoMed filed a Counterclaim for trademark infringement, false designation of origin, false advertising, and violation of California's unfair competition law. (Countercl., Doc. 30.) Acacia filed this Motion for Partial Summary Judgment on its declaratory relief and cancellation of trademark claims, and on NeoMed's trademark infringement, false designation of origin, and unfair competition claims, on the basis that the use of orange for graduation markings, text, and text boxes is functional, and therefore, not protectable as trade dress. (Mot. at 1, 3.)

## II. Legal Standard

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is

"material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

"In a civil action for trade dress infringement . . . for trade dress not registered on the *principal* register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3) (emphasis added). In other words, NeoMed carries the burden of persuasion with respect to functionality at trial. Nonetheless, Acacia, as the party moving for summary judgment, "has both the initial burden of production and the ultimate burden of persuasion" on the motion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* Once Acacia has produced negating evidence or shown that NeoMed lacks evidence of an essential element, NeoMed must come forward with some evidence of nonfunctionality to defeat summary judgment. *See Secalt, S.A. v. Wuxi Shenxi Construction Machinery Co., Ltd.*, 668 F.3d 677, 685 (9th Cir. 2012).

### III. Functionality Doctrine

"The principal role of trademark law is to ensure that consumers are able to identify the source of goods." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995)). "A functional product feature does not, however, enjoy protection under trademark law." *Id.* "In general terms, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982). A color is an

1  "essential" product feature if it "serves a significant nontrademark function." *Qualitex*,
2  514 U.S. at 170.
3      The Ninth Circuit's functionality test has evolved over time, particularly in response
4  to *Inwood*, *Qualitex*, and a subsequent Supreme Court case, *TrafFix Devices, Inc. v.*
5  *Marketing Displays, Inc.*, 532 U.S. 23 (2001). In *Disc Golf Association, Inc. v. Champion*
6  *Discs, Inc.*, the Ninth Circuit set forth four factors for analyzing functionality: "(1)
7  whether the design yields a utilitarian advantage, (2) whether alternative designs are
8  available, (3) whether advertising touts the utilitarian advantages of the design, and (4)
9  whether the particular design results from a comparatively simple or inexpensive method
10 of manufacture." 158 F.3d 1002, 1006 (9th Cir. 1998). In its most recent decision, the
11 Ninth Circuit explained that the *Disc Golf* factors "illuminate the functionality analysis,"
12 but that "a determination of functionality under *Inwood* may be seen as short circuiting
13 some of the *Disc Golf* factors," including the availability of alternative designs. *Secalt*,
14 668 F.3d at 685, 686-87. In fact, in *TrafFix*, the Supreme Court specifically stated that if a
15 feature is functional under the *Inwood* formulation, "there is no need to proceed further to
16 consider if there is a competitive necessity for the feature." *TrafFix*, 532 U.S. 33 (quoted
17 in *Au-Tomotive Gold*, 457 F.3d at 1071).
18
19     **IV.**    **Discussion**
20
21     In August 2008, less than a month after the USPTO allowed registration of
22 NeoMed's mark on the Supplemental Register, NeoMed's counsel sent letters to Baxa
23 Corporation, Utah Medical Products, Inc., and Children's Medical Ventures—all
24 manufacturers of neonatal enteral devices—stating, in relevant part:
25
26         NeoMed is working to create a coalition of manufacturers of
27           enteral products to establish orange as the color representing
28

5

> enteral safety, and would be happy for you to join that coalition. However, the use of orange specifically for gradation [sic] markings and text represents only our own products.

(Wesley Decl., Exs. 47-49, Doc. 39.) Consistent with this position, NeoMed has represented in its advertising that "orange signals enteral safety," "NeoMed Oral Dispensers feature orange lettering and precise gradient marking that signify 'enteral or oral' designed to connect with other compliant devices," and "[o]range lettering and graduation marking identify as enteral only." (*Id.*, Exs. 53, 54, 57.) Furthermore, in his deposition, the president of NeoMed, Anthony Lair, admitted that NeoMed uses orange for enteral safety. (Lair Dep. 30:16-19, Doc. 39, Ex. 33.) Lair also testified that "[i]t's always possible" that NeoMed chose orange in part because it signals enteral use (*id.* 86:20-22), and that "[i]t's possible" that he's told a NeoMed customer that the use of orange on NeoMed syringes indicates that the syringe is for "enteral use only" (*id.* 118:21-25).

Acacia also presents evidence from third parties, including other executives of other device manufacturers, medical device sales representatives, and a nurse, that orange is used to signal to hospital staff that a particular device is for enteral use, and to coordinate different enteral only devices, including syringes, extension tubing, and catheters. (*See, e.g.* Shirley Decl. ¶¶ 13, 16, Doc. 39-1.) Bruce Latoff, the owner of a medical device distributorship, states that "[c]urrently, the two dominant colors for enteral only devices are orange and purple," and that "both colors signify 'for enteral use only' to a substantial portion of the consumers in the industry." (Latoff Decl. ¶ 23, Doc. 39-1.) Sandra Beauman, a registered nurse and consultant to neonatal intensive care units, similarly states that "all major suppliers of enteral only feeding equipment, including oral syringes, currently use either an orange, purple or amber color scheme on their equipment," and that "orange still remains the predominant color used by manufacturers and hospital

1  professionals to designate enteral use only in the United States." (Beauman Decl. ¶¶ 29-
2  30, Doc. 39-1.) Based on this evidence, this case is indistinguishable from *Inwood*. As in
3  *Inwood*, color is used to aid hospital staff in visually identifying "enteral use only" devices.
4  *See Inwood*, 456 U.S. at 853.

5        NeoMed's only response is a variation of the same argument it asserted in the
6  August 2008 letters to other manufacturers: "Acacia's evidence shows that some
7  companies use orange on enteral products while others do not, and that those that do use
8  orange on some enteral products do not use orange graduation markings and text on the
9  barrels of their enteral syringes." (SGI ¶ 11.) The essence of this argument is that orange
10 is functional, but NeoMed's particular use of orange is not functional. However, a product
11 feature cannot be nonfunctional where, as here, "'the whole is nothing other than the
12 assemblage of functional parts.'" *Tie Tech v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir.
13 2002) (quoting *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013
14 (9th Cir. 1999)). NeoMed cites to *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d
15 1252, 1259 (9th Cir. 2001) for the proposition that trade dress may be protectable even if
16 some of the elements are functional in isolation. (Opp'n at 11.). As NeoMed's own
17 articulation of the holding in *Clicks* provides, the whole may be protectable where "*some*
18 of the claimed elements" are functional. (*Id.* (emphasis added).) Here, none of the
19 elements are nonfunctional.

20       As in *Secalt*, NeoMed's "fundamental misunderstanding—which infects its entire
21 argument—is that the presumption of functionality can be overcome on the basis that its
22 product is visually distinguishable from competing products. While such distinctive
23 appearance is necessary, it is here insufficient to warrant trade dress protection." *Secalt*,
24 668 F.3d at 684. NeoMed repeats time and again variations on the theme that "different
25 manufacturers use different colors to signify different systems." (Opp'n at 3.) This
26 argument admits that color is used functionally, regardless of whether it is orange or
27 another color, to signify different systems. Furthermore, the essence of this argument is
28

exactly that rejected in *Secalt*: that NeoMed's use of the orange is somehow distinctive because it visually distinguishable from others' use of orange. (*See* Opp'n at 17.)

As a fall back argument, NeoMed asserts that color coordination has no current functional benefit because "[s]pecially-designed enteral-only syringes, physically incapable of being connected to IV tubes, have become universal in the neonatal environment []and will be mandated by law in California as of January 1, 2013[]." (Opp'n at 15.) The only evidence NeoMed cites for this argument is the deposition of Anthony Lair, NeoMed's CEO, which does not address the current market but rather color coordination in the industry in previous years, and a report stating that physical changes are necessary to avoid errors. (Opp'n at 15-16.) Neither piece of evidence supports the proposition that color coordination, or the use of orange to signal enteral use, is anachronistic or lacks function.

Finally, NeoMed asserts that, in 2008, it tried to put together a coalition of manufacturers to promote the use of orange as the official color to signal enteral use, but that its effort was rejected. (SGI ¶ 21.) Notably, this effort came *after* NeoMed first filed its trademark application. (Wesley Decl. ¶ 8, Ex. 36. Doc. 39-1, 39-6.) Furthermore, much of NeoMed's argument with regard to this fact appears to boil down to the assertion that orange was initially intended to be functional, but is now source identifying. (*See* Opp'n at 23-24.) The mere fact that orange is not functioning *well* as an indicator of enteral use does not transform it into a nonfunctional feature. As the *Inwood* Court stated, "*some* patients commingle medications in a container and rely on color to differentiate one from another." 456 U.S. at 853. Presumably, other patients use other methods to differentiate drugs, such as storing them in separate bottles. Therefore, under *Inwood*, a design feature does not have to achieve perfect functionality to be functional as a matter of law.

Accordingly, the Court concludes that NeoMed there is no triable issue of fact with regard to the functionality of NeoMed's use of orange.

## V. Conclusion

For the foregoing reasons, the Court GRANTS Acacia's Motion for Partial Summary Judgment. The USPTO is directed to cancel U.S. Trademark Registration No. 3,478,363.

DATED: July 23, 2012

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE